1  TONY WEST
   Assistant Attorney General
2
   SHEILA M. LIEBER
3  Deputy Director, Federal Programs Branch

4  ETHAN P. DAVIS
   Trial Attorney
5  U.S. Department of Justice
   Civil Division
6  Federal Programs Branch
   20 Massachusetts Ave. NW
7  Washington, D.C. 20530
   Telephone: (202) 514-9242
8  Facsimile: (202) 616-8470
   E-Mail: ethan.p.davis@usdoj.gov
9  New York Bar

10
   Attorneys for the United States
11
                **UNITED STATES DISTRICT COURT**
12           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                        **WESTERN DIVISION**
13

14
   NATIONAL ASSOCIATION OF CHAIN   )   No. 2:09cv7097 (CAS)
15 DRUG STORES, ET AL.             )
                                   )   STATEMENT OF INTEREST
16                                 )   OF THE UNITED STATES
        Plaintiffs,                )   OF AMERICA
17                                 )
             v.                    )   DATE: December 7, 2009
18                                 )
   ARNOLD SCHWARZENEGGER, ET AL.   )   TIME: 10:00 A.M.
19                                 )
                                   )   BEFORE: Judge Snyder
20      Defendants.                )
   _____)
21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    California need not perform or consult cost studies before the rollback in AWPs may be reflected in the state's payments for prescription drugs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

i

# TABLE OF AUTHORITIES

**CASES**                                                                           **PAGE(S)**

California Pharmacists Association v. Maxwell-Jolly,
   563 F.3d 847 (9th Cir. 2009)........................................................ 1

Independent Living Center of Southern California, Inc. v. Shewry,
   2008 WL 3891211 (C.D. Cal. 2008)............................................ 2

Independent Living Center of Southern California, Inc. v. Shewry,
   543 F.3d 1050 (9th Cir. 2008)..................................................... 5

Long Term Care Pharmacy Alliance v. Ferguson,
   362 F.3d 50 (1st Cir. 2004)......................................................... 2

Managed Pharmacy Care v. Jolly,
   603 F. Supp. 2d 1230 (C.D. Cal. 2009)....................................... 2

Minnesota Pharmacists Association et al. v. Pawlenty et al.,
   No. 09-02723 (D. Minn. Nov. 6, 2009)....................................... 5

New England Carpenters Health Benefits Fund v. First DataBank,
   602 F. Supp. 2d 277 (D. Mass. 2009).......................................... 4

Orthopaedic Hospital v. Belshe,
   103 F.3d 1491 (9th Cir. 1997)............................................. 1, 2, 5

Pharmacists Society of the State of New York et al. v. Paterson et al.,
   No. 09-01100 (N.D.N.Y. Nov. 2, 2009)...................................... 5

Washington State Pharmacy Association et al. v. Gregoire et al.,
   2009 WL 1259632 (W.D. Wash. 2009)...................................... 2

**STATUTES AND REGULATIONS**

42 C.F.R. § 447.200.................................................................... 3

42 C.F.R. § 447.204.................................................................... 3

42 U.S.C. § 1396a(a)(30)(A)................................................... 1, 3

42 U.S.C. § 1396c.................................................................. 2, 4

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

ii

**INTRODUCTION**

At a hearing held on December 7, 2009, this Court requested supplemental briefing from the United States regarding whether, in light of the rollback in average wholesale prices ("AWPs") caused by the First DataBank settlement, California's Medicaid plan complies with the "quality of care" and "access" requirements of 42 U.S.C. § 1396a(a)(30)(A) ("Section 30A"). Specifically, the Court asked whether plaintiffs are correct that California was required, in response to the rollback in AWPs, to perform or consult cost studies before the rollback could be reflected in the state's payments for prescription drugs. The United States submits this brief in response to the Court's request.

It is the position of the United States, based on the Secretary of Health and Human Services' interpretation of the Medicaid Act, that California was not obliged to perform or consult cost studies in this situation. It is true that Ninth Circuit precedent requires a state, "when setting specific payment rates," to "rely on responsible cost studies, its own or others', that provide reliable data as a basis for its rate setting." Orthopaedic Hosp. v. Belshe, 103 F.3d 1491, 1496 (9th Cir. 1997); see also Cal. Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 850 (9th Cir. 2009) ("In [Orthopaedic Hospital], we held that 42 U.S.C. § 1396a(a)(30)(A) requires the state to consider efficiency, economy, quality of care, and access before setting Medi-Cal reimbursement rates."). But that requirement, by its terms, is limited to situations in which the state modifies payment rates or payment methodology; without question, it does not obligate California to conduct or consult cost studies whenever the inputs to the state's payment formula happen to change.

It therefore is no surprise that every case in this circuit in which a court has enjoined a payment reduction has involved a state's affirmative decision to change its payment methodology, not an independent third party's decision to alter its

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

-1-

1  published prices.  See, e.g., Wash. State Pharmacy Ass'n v. Gregoire, 2009 WL
2  1259632 (W.D. Wash. 2009) (order granting temporary restraining order);
3  Managed Pharmacy Care v. Jolly, 603 F. Supp. 2d 1230 (C.D. Cal. 2009) (order
4  granting preliminary injunction); Indep. Living Ctr. of S. Cal. v. Shewry, 2008 WL
5  3891211 (C.D. Cal. 2008) (order granting in part and denying in part motion for
6  preliminary injunction), aff'd, 572 F.3d 644 (9th Cir. 2009).  Here, although the
7  First DataBank settlement resulted in a change in published AWPs, California did
8  not engage in any "rate setting," Orthopaedic Hosp., 103 F.3d at 1496, and
9  therefore need not undertake additional cost studies before the settlement-related
10 reduction in AWPs may be reflected in the state's payments for prescription drugs.
11      It is no answer to this point to suggest, as do plaintiffs, that without such a
12 continuing obligation to conduct cost studies a state might with impunity fall out
13 of compliance with Section 30(A).  If, at any time, the Secretary has reason to
14 believe that a state's approved drug payment methodology is leading to problems
15 with efficiency, economy, quality of care, or access, she is entitled to ask the state
16 to demonstrate, through cost studies or other mechanisms, that its Medicaid plan
17 complies with Section 30(A).  If the inputs to the state's payment formula change
18 so dramatically that the Secretary believes they are no longer reliable, she could
19 also ask the state to perform additional studies or provide further assurances.  If,
20 after reviewing the results of the studies, the Secretary determines that the action
21 of the state would likely result in patient access problems, the Secretary would
22 address the issue with the state and if dissatisfied with the state's response, could
23 initiate a compliance action under 42 U.S.C. § 1396c, which could result in the
24 withdrawal of federal funds until the state demonstrates that its plan complies with
25 Section 30(A).  In other words, "[t]his is decidedly not a situation lacking an
26 outside watchdog."  Long Term Care Pharmacy Alliance v. Ferguson, 362 F.3d
27 50, 58 (1st Cir. 2004).  In this case, the Secretary has no reason to believe that
28

-2-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

such problems exist in California as a result of the reductions by First DataBank in previously overstated published AWPs.[1] Accordingly, this Court should deny plaintiffs' motion for a preliminary injunction.

## ARGUMENT

**I. California need not perform or consult cost studies before the rollback in AWPs may be reflected in the state's payments for prescription drugs.**

Plaintiffs principally contend that California is required, in response to the four percent rollback in AWPs caused by the First DataBank settlement, to conduct or consult new cost studies before the new published prices may be reflected in Medi-Cal's payments for prescription drugs. Plaintiffs base this argument on the Ninth Circuit's decision in Orthopaedic Hospital, which they suggest imposes a continuing obligation to consult cost studies in response to external changes in the inputs to a state's drug pricing formula. This claim is incorrect.

1. Neither the Medicaid statute nor any implementing regulation imposes such a requirement. Section 30(A), by its terms, requires a "State plan . . . to provide such methods and procedures" to ensure that "payments are consistent . . . with quality of care" and access. 42 U.S.C. § 1396a(a)(30)(A). Although plaintiffs emphasize that the statute is phrased in terms of "payments," Section 30(A) plainly does not obligate the state to ensure that every individual payment (e.g., payment for each individual drug) meets or exceeds a provider's costs. Rather, it requires only that a state plan "provide such methods and procedures" to achieve Section 30(A)'s general goals. The regulations echo the statutory language. See 42 C.F.R. §§ 447.200, 447.204. The Secretary has already found that drug payments made in accordance with Medi-Cal's payment methodology,

---

[1] The inflation of published AWPs is discussed in the United States's prior Statement of Interest filed on December 4, 2009.

-3-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

which contemplates that prescription drug payments will change in response to external data inputs, meets this standard.

The lack of a statutory obligation continually to study costs does not mean that a state, by neglecting to update its payment formula in response to external changes in published prices, may allow its plan to fall out of compliance with Section 30(A). If the Secretary, in her discretion, determines "that in the administration of the plan there is a failure to comply substantially with [any provision contained in § 1396a]," she may withhold payments to the state agency in full or in part "until the Secretary is satisfied that there will no longer be any such failure to comply." 42 U.S.C. § 1396c. The Secretary's authority to remedy a Section 30(A) violation by initiating a compliance action and withholding federal funds in whole or in part strengthens the United States's view that Section 30(A) does not obligate the state to perform or consult cost studies continually whenever published price points fluctuate.

In this case, the United States has no reason to believe that the four percent rollback in AWPs caused by the First Databank settlement will detrimentally affect efficiency, economy, quality of care, or access. In fact, the court approving the settlement concluded that pharmacies had unjustly benefitted from the unlawful scheme and that such pharmacies "seem to have survived prior to the start of this fraudulent scheme, making it seem more likely that they will survive after it has been undone." New England Carpenters Health Benefits Fund v. First DataBank, 602 F. Supp. 2d 277, 284 (D. Mass. 2009). Moreover, widespread abuse of the AWP system has cost the federal government, states, and third-party payors billions in inflated payments. There is no reason for plaintiffs to continue to receive the benefits of this abuse.

-4-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

2. <u>Orthopaedic Hospital</u> does not require a contrary conclusion. There, California affirmatively changed its payment methodology by imposing an across-the-board ten percent payment reduction for hospital outpatient services. <u>Orthopaedic Hosp.</u>, 103 F.3d at 1496. The Ninth Circuit concluded that the state "must set hospital outpatient reimbursement rates that bear a reasonable relationship to efficient and economical hospitals' costs of providing quality services . . . . To do this, the Department must rely on responsible cost studies, its own or others', that provide reliable data as a basis for its rate setting." <u>Id.</u> Here, in contrast, California has engaged in no "rate setting" at all. Although plaintiffs, in similar cases filed in New York and Minnesota, allege that the rate reduction was a "decision" by the state to "adopt a new definition of average wholesale price," <u>see</u> Pls.' Opening Mem. of Law in Supp. of Their Mot. for Prelim. Inj. 1, <u>Pharmacists Soc'y of the State of N.Y. v. Paterson</u>, No. 09-01100 (N.D.N.Y. Nov. 2, 2009); Pls.' Mem. of Law in Supp. of Mot. for Prelim. Inj. 1, <u>Minn. Pharmacists Ass'n v. Pawlenty</u>, No. 09-02723 (D. Minn. Nov. 6, 2009), California did not make any "decision" to "adopt a new definition" of anything. That certain published AWPs changed as a result of litigation to which California was not a party is plainly not California's doing. Indeed, the state has retained the methodology for calculating prescription drug payments contained in its CMS-approved state plan. Accordingly, <u>Orthopaedic Hospital</u> provides no support to plaintiffs.[2]

---

[2] The United States does not interpret the Court's request for subsequent briefing as seeking the government's views as to whether <u>Orthopaedic Hospital</u> or <u>Independent Living Center of Southern California, Inc. v. Shewry</u>, 543 F.3d 1050 (9th Cir. 2008), were correctly decided.

-5-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

3. Plaintiffs' position is flawed for another, related reason. A requirement that a state must conduct or consult cost studies before any fluctuations in published prescription drug prices may be reflected in the state's payments would impose impossible, absurd burdens on state Medicaid agencies and potentially on the Secretary as well. While published prices rise and fall daily in response to many different pressures, cost studies may take months or years to complete. Indeed, even since the September 26, 2009 payment reduction, AWPs on many pharmaceutical products have increased by more than four percent. See Gorospe Decl. ¶ 9. A Medicaid program in which states were required to study the effects of every price fluctuation would rapidly grind to a halt.

## CONCLUSION

For the foregoing reasons, the United States respectfully urges this Court to conclude that California is not required to conduct or consult cost studies before allowing the four percent rollback in AWPs caused by the First DataBank settlement to be reflected in its payments for prescription drugs.

Dated: December 21, 2009          Respectfully submitted,

SHEILA M. LIEBER
Deputy Director

/s/ Ethan Davis
ETHAN P. DAVIS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 514-9242
Fax: (202) 616-8470

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

-6-

Ethan.P.Davis@usdoj.gov

COUNSEL FOR THE UNITED STATES

-7-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543